## PERCIVAL *v.* McCoy and others.

*(Circuit Court, D. Iowa, W. D.* 1882.)

1. **BOND OF INDEMNITY—PARTIES—JOINDER OF, TO RECOVER THE PENALTY.**

   A party cannot sue alone on a bond of indemnity made to himself and other obligees on a prior delivery bond, without showing that he alone has received injury by the breach thereof, and therefore that he brings the suit without joining the other obligees as plaintiffs. He cannot set out a bond as running to or as made to himself alone, and give in evidence an instrument made to himself jointly with other obligees.

Same—Misrecital in Pleading—Variance.

In an action upon an indemnity bond, given to indemnify the sureties on a prior delivery bond, a misrecital of the amount of the penalty in the delivery bond, of the parties in it to be indemnified, and of the terms and conditions of the delivery to be made under it, is a fatal variance.

3. Same—Variance not Cured by Averment of Mistake.

Such variance cannot be cured by an averment that the indemnity bond, sued on, was executed by mistake and inadvertence, without alleging and proving that the mistake was mutual, and that it was the intention of the parties to the indemnity bond to indemnify the sureties on the prior delivery bond.

4. Same—Liability of Sureties—Remedy in Equity.

The liability of sureties cannot be enlarged or changed by averment in the pleading, whatever the understanding of the pleader may have been; and where an indemnity bond has been executed by mistake or inadvertence, the proper remedy is by a bill in equity to reform it and make it conform to the mutual intention of the parties.

At Law.

This is an action at law upon a penal bond in the sum of $12,000 executed by said defendant McCoy as principal, and the other defendants as sureties, to George Bebbington, Robert Percival, J. P. Williams, J. E. Rudd, and Marshall Key. The bond thus sued on purports upon its face to be intended to indemnify said obligees against their liability as sureties for McCoy upon a certain delivery bond executed by them with said McCoy to the government of the United States to secure the delivery to McCoy of his distillery, which the government had seized. The case is now before the court a second time upon the demurrer of the defendants to the plaintiff's amended and substituted petition.

The petition states that in the month of November, 1868, the government of the United States seized the distillery of the defendant McCoy for an alleged violation of the revenue laws; that McCoy, with the plaintiff and one John E. Rudd as sureties, executed a delivery bond to the United States in the penal sum of $6,705; that the property was released on said bond, and the possession of the same delivered to the plaintiff to secure him against loss as surety on said delivery bond.

It is further alleged that McCoy, being desirous to remove said distillery from Iowa to Omaha, Nebraska, executed and delivered to the plaintiff a bond in the sum of $12,000, with the other defendants, James G. Megeath, John Davis, and Jesse H. Lacy, as sureties, conditioned that the said J. C. McCoy would hold the plaintiff and others, his co-sureties, harmless from all liability on their said delivery bond to the United States, and thereupon that the plaintiff accepted said indemnifying bond, waived his right to retain posses-

sion of said distillery property, and surrendered the same to McCoy to be removed to Omaha. Both the delivery and indemnifying bonds are exhibited by copy and made a part of the petition.

It is further alleged that the government obtained a decree of condemnation against the distillery property; that McCoy failed to deliver the same to the marshal, or pay its appraised value; that a summary judgment was therefore, according to the practice of the court, entered against the plaintiff, and said McCoy and Rudd, on the delivery bond, for the sum of $6,705, the amount of the penalty thereof, and $183.75 costs; that execution was issued upon said judgment and levied upon the property of the plaintiff, Percival, and that he has been compelled to pay the same.

Said plaintiff, Percival, therefore sues the defendants as obligors of said indemnity bond, claiming against them the sum he has been compelled to pay as principal, interest, and costs upon said judgment.

It appears by inspection of the exhibits that the indemnity bond on which the suit is brought does not run to the plaintiff alone, nor to the plaintiff and his co-surety, Rudd, in the delivery bond, but to George Bebbington, Robert Percival, J. P. Williams, J. E. Rudd, and Marshall Key, none of whom, except said Percival and Rudd, are parties to the delivery bond. The plaintiff alone, of the obligors just named, is a party to the present suit.

The plaintiff alleges that it was recited by mistake and inadvertence in the indemnity bond that the delivery bond is in the sum of $10,000, whereas it is only for the sum of $6,705; that it was also by inadvertence and mistake recited that said delivery bond was executed by said McCoy and George Bebbington, Robert Percival, and J. P. Williams as sureties, whereas in truth and in fact it was executed by McCoy as principal, and the plaintiff and Rudd as sureties; and that it was also recited by mistake and inadvertence in the indemnity bond that the delivery bond was conditioned that the obligors in the same should return said distillery property if judgment should be obtained against it, when in fact said delivery bond was conditioned that the said McCoy should keep and return said property in as valuable and good condition as it was at the time of the seizure, or pay an amount equal to the appraised value of the same, and otherwise in all things abide and perform the orders and decrees of the court.

*Sapp & Lyman,* for plaintiff.

*J. M. Woolworth,* for defendants.

LOVE, D. J. After much consideration it seems to me that to maintain the case now stated in the plaintiff's amended petition at law and before a jury, would involve great if not insuperable difficulties. The bond sued on runs to George Bebbington, Robert Percival, J. P. Williams, J. E. Rudd, and Marshall Key, as obligees, and there is no allegation in the amended and supplemental petition that it was so made by mistake. On the contrary, it is averred that said defendants McCoy, Megeath, Davis, and Lacy executed and delivered to the plaintiff (Percival) the bond in question. It seems clear that if this bond were offered in evidence under such an allegation there would be a fatal variance between the instrument as set out and the proof. Granting that the plaintiff may sue alone under section 2552 of the Code, without joining the other obligees, he must, nevertheless, set out and state the bond correctly, with proper allegations, showing that he alone has received injury by the breach, and therefore that he brings the suit without joining the other obligees as plaintiffs. But he cannot set out a bond as running to or as made to himself alone, and give in evidence an instrument to himself jointly with other obligees.

It is claimed that the bond sued on was given to indemnify the sureties in the first bond, namely, Percival and Rudd, against liability accruing to them from a breach thereof. If so, it must have been intended that the bond sued on should run to Percival and Rudd, whereas its expressed obligees are Bebbington, Percival, Williams, Rudd, and Key. If this occurred by mistake, it ought to be shown by proper averments. If it was the intention of the defendants to bind themselves, in the bond sued on, (as indicated by its express terms,) to indemnify Bebbington, Percival, Williams, Rudd, and Key against loss accruing to them under a bond executed by them, I do not see how the defendants can be made responsible to the plaintiff for loss accruing to him by reason of the breach of a bond executed by him and Rudd alone. The defendants can only be made responsible, if at all, by the plaintiff's alleging that it was the defendants' intention to bind themselves to indemnify the plaintiff and Rudd, and to execute the bond sued on for that purpose, and that by mutual mistake the bond sued on failed to express that intention. For it is quite obvious that the defendants might have been willing to execute a bond to indemnify Bebbington, Williams, Percival, Rudd, and Key, and yet wholly unwilling to sign such an instrument to indemnify Percival and Rudd alone. One of the defendants may have been

induced to execute the bond for the interest of one of the several obligees; another for some other; and a third for a still different obligee. One of the defendants may have signed the bond in the belief that one or more of the obligees, in whom he had confidence, would see that McCoy should fulfill the conditions of the original bond; another, upon his faith that other and different obligees would see to the performance of its conditions. It by no means follows, therefore, from the fact that these defendants signed the bond in suit to save harmless the several obligees who appear upon the face of it, that they would have executed it to indemnify the plaintiff alone, or the plaintiff and Rudd; and the only way to make them liable, if it can be done at all, is by averring and proving that they intended to bind themselves to the actual sureties in the original bond for their indemnity, and that this intention was, by mistake, not expressed in the instrument which they signed.

It must be remembered that the bond sued on purports to bind its obligors to protect the plaintiff and other sureties against loss accruing to them as sureties to a previous bond. The bond sued on stipulates substantially that the principal in the first bond shall perform its conditions, and that the obligors in the second bond will be responsible for any loss arising from the default of the principal in the first bond. Both bonds are exhibited by copy. But the terms and conditions of the first bond are so essentially misrecited in the second bond, that upon the face of the two instruments, as shown by the exhibits, there is no identity between the first bond and the bond recited. The plaintiff seeks to establish this identity by the averments of his amended and substituted petition. He sets out the first bond, and shows that he suffered loss by reason of the breach of its conditions. This first bond is in the penal sum of $6,705, but the bond sued on recites that it is given as indemnity against a prior bond for the sum of $10,000.

Again, the first bond purports on its face to be executed by James C. McCoy as principal, and Robert Percival and John E. Rudd as sureties. The bond sued on runs to George Bebbington, Robert Percival, J. P. Williams, J. E. Rudd, and Marshall Key, and it recites that Bebbington, Percival, and Williams had become sureties in the previous delivery bond, and it stipulates to indemnify Bebbington, Williams, Percival, and all other sureties on said first bond against liability on the same.

The condition of the first or delivery bond is that McCoy, the principal, shall keep and return said property in *as valuable and good con-*

*dition as it was when seized, or pay an amount equal to the appraised value of the same, and in all things abide and perform the final order or decree of the court.* The condition of the bond indemnified against, as recited in the bond sued on, is that McCoy, with Bebbington and Percival and Williams as sureties, had executed a delivery bond to the United States, *conditioned that they would return the property seized if a judgment should be obtained against it.*

Thus it appears by the face of the two bonds as exhibited that the obligors in the second bond did not undertake to indemnify the plaintiff against the bond under which he suffered loss, but against a bond radically and essentially different; different in the penal sum, in the parties, and in the conditions to be performed. Here is evidently a wide gap to be filled, and the plaintiff attempts to fill it by the allegations of his amended and substituted petition. He avers that these several recitals in the bond sued on were made by mistake and inadvertence. He avers that in writing said bond of indemnity, it was recited by mistake that the first bond was in the penal sum of $10,000, whereas, in fact, it was in the sum of $6,705; that it was also by mistake recited that the first-mentioned bond was executed by said McCoy and George Bebbington, Robert Percival, and J. P. Williams as sureties, when in fact it was executed by J. C. McCoy, with Robert Percival and John E. Rudd as sureties; and that it was also recited by mistake that the first-mentioned bond was conditioned that the obligors should return said property if a judgment should be obtained against it, when in fact said bond was conditioned that J. C. McCoy should keep and return said property in as valuable and good condition as it was when seized, or pay an amount equal to the appraised value thereof, and in all things abide and perform the final order and decree of the court. Waiving at present the question whether or not the alleged mistake can be corrected by averment and proofs before a jury in an action at law it is sufficient to say that the averments themselves are wholly inadequate and insufficient.

It is not alleged that the mistake in the recitals was mutual, or that it was the intention of both parties that the defendants should be bound to indemnify the plaintiff against loss under the first-named bond, but that this intention was not expressed in the bond sued on by reason of a mistake common to both parties. Certainly a written instrument cannot be changed or reformed by parol evidence, either at law or in equity, upon the ground of mistake and in the absence of fraud, unless the mistake was mutual; because it is absolutely *incompetent* for any court to *make* a contract for the parties.

For aught that appears by the plaintiff's averments the mistake was wholly on his part, and the defendants intended to bind themselves exactly as the bond which they signed imports. If the defendants intended to bind themselves to indemnify the plaintiff against liability under just such an instrument as the bond sued on recites, with the conditions recited in the same and none other, their liability cannot be enlarged or changed by averment, whatever the understanding of the plaintiff may have been. It is conceivable that the defendants may have been quite willing to undertake that McCoy should return the property simply, and yet entirely unwilling to stipulate that he would return it in as valuable and good condition as it was when seized. They might well assume that he would be able to perform one of these things and not the other, and that he would in good faith perform what he might be able to do.

It is not averred that these defendants, who are all except McCoy sureties, ever saw the first or delivery bond, or that they had any knowledge of it, except what they found in the recitals of the bond which they signed. For aught that appears, McCoy, or some other party to the delivery bond, may have presented to the defendants the bond sued on, and obtained their signatures under the belief that it truly recited the conditions of the delivery bond. It may, therefore, have been the intention of the defendant sureties to bind themselves only to the extent of McCoy's obligation under the delivery bond, which was that he should return the property, in whatever condition it might be.

It seems to me that the proper remedy of the plaintiff, if he has any upon the facts disclosed, is by a bill in equity to reform the bond sued on, so as to conform it to the mutual intention of the parties. Even if there be a concurrent remedy at law, it is, at best, an imperfect remedy; and equity is by no means ousted of its jurisdiction to reform a written instrument by the fact that a concurrent remedy exists at law. The remedy in equity, if the proper facts can be shown, is unquestionable and entirely adequate, while that which the plaintiff is now pursuing is, to say the least, dubious and imperfect.

Demurrer sustained.